**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOAN M. ALTEMUS,

    Plaintiff,

v.                                            CASE NO: 8:07-cv-483-T-26MAP

HARTFORD LIFE INSURANCE COMPANY,

    Defendant.
_____/

# O R D E R

Before the Court is Defendant's Dispositive Motion for Summary Judgment, Statement of Undisputed Facts, and attachments including the administrative record, and Plaintiff's Memorandum in Opposition with attachments. (Dkts. 11, 12, 14 & 22). After careful consideration of the Motion, the submissions, the administrative record, and the entire file, the Court concludes that summary judgment should be granted in favor of Defendant.

## PERTINENT FACTS

In this action brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), Plaintiff challenges the cessation of long term disability (LTD) benefits by Hartford Life and Accident Insurance Company (Hartford Life),[1] the plan administrator for Scotty's, Plaintiff's employer. After Defendant filed a timely motion for

---

[1] Defendant asserts that it was mis-identified as Hartford Life Insurance Company.

summary judgment (Dkt. 11), on March 4, 2008, Plaintiff and James F. Altemus filed a joint Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Western District of Washington.[2] Both parties agree that the automatic stay provision of the Bankruptcy Code does not apply to the LTD benefits sought in this action because the benefits are not property of the bankruptcy estate.[3]

Under the terms of the policy, Hartford Life "has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the [policy]."[4] The policy defines "totally disabled" for a period of time, during the elimination period and for the following 24 months, as being "prevented by Disability from doing all the material and substantial duties of your own occupation on a full time basis."[5] After the first two years and as long as the claimant remains totally disabled, the employee must be "prevented by Disability from doing any occupation or work for which [he or she is] or could become qualified by training, education, or experience."[6] According to the terms of the policy, once the claimant began receiving LTD benefits, the claimant was under an obligation to furnish written proof that the total disability was continuing.[7] Hartford Life has the right to determine whether the proof

---

[2] Case No. 08-40896-PBS.

[3] There is no indication that either counsel sought the direction of the bankruptcy court.

[4] See docket 14 (administrative record) at H04.

[5] See docket 14 at H07.

[6] See docket 14 at H07.

[7] See docket 14 at H40, 61, 64.

submitted was satisfactory.[8]  The policy provided for termination of LTD benefits in any one of three situations: (1) the claimant was no longer totally disabled; (2) the claimant failed to furnish proof of continuing total disability; and (3) the claimant failed to remain under the regular care of a physician.[9]  Hartford Life also had the right under the policy to require the claimant to submit to an examination to determine whether he or she was totally disabled.[10]

Plaintiff initially met the qualifications of total disability and her LTD benefits commenced on February 18, 2000.[11]  Hartford Life relied on two Attending Physician's Statements to make this determination.  Dr. Palmer Branch's statement provided evidence of plantar fasciitis in both feet, preventing standing for more than 10-15 minutes at a time and any lifting at all.[12]  Dr. David Dietrich's statement supported a diagnosis of chronic cervical and lumbar strain, prohibiting prolonged standing or lifting more than 10 pounds.[13]

Three additional Attending Physician Statements were submitted on behalf of Plaintiff before approximately February 26, 2001, when she ceased providing medical information.  Dr. Jennine Brandt of the MacDill Airforce Base Family Practice Clinic diagnosed fibromyalgia and depression with subjective symptoms of multiple joint pain.  Dr. Frederick Lecheler confirmed chronic plantar fasciitis preventing standing for more than 15 minutes and lifting any weight at

---

[8] See docket 14 at H40, 61, 64.

[9] See docket 14 at H40.

[10] See docket 14 at H68.

[11] See docket 14 at H155-157.

[12] See docket 14 at H483-484.

[13] See docket 14 at H825-828.

all. Dr. Michelle Milord, a rheumatologist, gave Plaintiff a primary diagnosis of cervical spondylosis with secondary diagnoses of fibromyalgia and osteoarthritis, barring any lifting over 10 pounds.[14]

Hartford Life notified Plaintiff in August 2001 that she would need to qualify under the "any occupation" clause of the policy as of February 18, 2002, in order to continue receiving LTD benefits.[15] After a telephonic interview with Plaintiff in October 2002, Hartford Life determined that an independent medical examination (IME) was necessary to evaluate whether Plaintiff was eligible for continued LTD benefits.[16] After quite some time passed, an IME finally took place on July 7, 2004, which was performed by Dr. David Baras, who was board certified in Physical Medicine and Rehabilitation.[17] Dr. Baras concluded in his report that there was no evidence of plantar fasciitis, problems with stance or walking, or any type of neurological problems.[18] He opined that Plaintiff could perform sedentary full time work and specifically that "the manifestations of the fibromyalgia are not so severe that it would preclude her from doing any type of occupation."[19] He furthered noted that the only treatment necessary was psychiatric.[20]

---

[14] See docket 14 at H485-490.

[15] See docket 14 at H148-149.

[16] See docket 14 at H579, 215-220.

[17] See docket 14 at H417-421.

[18] See docket 14 at H417-421.

[19] See docket 14 at H420.

[20] See docket 14 at H420.

After receipt of the IME and after unsuccessful attempts to reach Plaintiff, by letter dated November 15, 2004, Hartford Life discontinued benefits effective November 1, 2004.[21] On December 1, 2004, Plaintiff telephoned Hartford Life and told them that her home had been destroyed by Hurricanes Frances and Jeanne and she had lost any forms sent.[22] Hartford Life agreed to reinstate LTD benefits if Plaintiff submitted satisfactory information.[23] Plaintiff complied by completing a claimant's questionnaire, and Hartford Life reinstated her LTD benefits effective November 1, 2004.[24]

Efforts continued to no avail to gather information from Plaintiff regarding her medical condition.[25] On April 11, 2005, Nurse Kimberly Buck, a Clinical Case Manager for Hartford Life, reviewed Plaintiff's file.[26] When Nurse Buck contacted Dr. Milord to discuss Plaintiff's progress, she learned that Plaintiff had not seen Dr. Milord since September 2004, despite directions to the contrary.[27] On June 21, 2005, Hartford Life notified Plaintiff of termination of LTD benefits effective July 1, 2005, based on her failure to furnish proof of disability and failure to remain under the regular care of a physician, both violative of the policy.[28]

---

[21] See docket 14 at H119-122, 209-211.

[22] See docket 14 at H208-209.

[23] See docket 14 at H208-209.

[24] See docket 14 at H394-399, 124-126.

[25] See docket 14 at H108, 198-205.

[26] See docket 14 at H199-201.

[27] See docket 14 at H197-199.

[28] See docket 14 at H106-109.

Plaintiff telephoned Hartford Life on August 1, 2005, and Hartford Life advised her that it would consider reinstating her LTD benefits, again.[29] Dr. Milord completed an Attending Physician's Statement in October 2005, indicating a primary diagnosis of osteoarthritis and a secondary diagnosis of fibromyalgia.[30] She opined that all physical activities were limited indefinitely due to the various chronic conditions including 2001 spinal MRI and x-rays showing scoliosis and nerve root impairment.[31] Dr. Milord also completed a Physical Capacities Evaluation (PCE) form indicating that Plaintiff could work no more than 2 to 3 hours per day.[32] She stated that Plaintiff would never return to work.[33]

Nurse Barbara McClurkin, a Clinical Case Manager for Hartford Life, reviewed the reports from Dr. Milord and found the documents did not provide "any objective medical data that would support inability to perform sedentary work."[34] Nurse McClurkin observed that Plaintiff's restrictions and limitations placed on her by Dr. Milord were extreme in comparison to Plaintiff's actual symptoms and conditions, particularly in view of the IME performed by Dr. Baras.[35]

---

[29] See docket 14 at H193.

[30] See docket 14 at H322-323.

[31] See docket 14 at H322-323.

[32] See docket 14 at H324-325.

[33] See docket 14 at H324-325.

[34] See docket 14 at H186-187.

[35] See docket 14 at H186-187.

In January 2006, Plaintiff's medical records were reviewed by Dr. William Sniger, board certified in Physical Medicine and Rehabilitation, of the Medical Advisory Group LLC (MAG) for an independent medical review.[36] On February 15, 2006, Dr. Sniger made the following medical findings in relevant part:

> X-rays and labs showed no significant abnormalities. There were no significant physical exam findings other than multiple tender points. The present consensus of rheumatologic opinion and the results of evidence-based medicine as presented in the 2003 edition of the Official Disability Guidelines by the Work Loss Data Institute concur that individuals with fibromyalgia are capable of performing at least sedentary level work. . . .
>
> In summary, the preponderance of objective information does not appear to support the severity of the claimant's subjective symptoms . . .
>
> Based upon the subjective and objective information available to me, it is my opinion with a reasonable degree of medical certainty that the preponderance of information does not support the claimant's alleged inability to perform full-time work.
>
> I recommend the following restrictions/limitations. Lifting/carrying of at least 10 pounds occasionally; opportunity to change positions as needed.[37]

After Dr. Sniger wrote this report, he received Plaintiff's spinal MRI of January 2006.[38] Dr. Sniger, however, did not change his opinion because the disc herniation and effacement of the left S1 nerve root evidenced in Plaintiff's MRI "are found in a significant portion of the

---

[36] See docket 14 at H251-255.

[37] See docket 14 at H252.

[38] See docket 14 at H245-249.

asymptomatic general population in [Plaintiff's] age group" and there were no radiculopathy or focal neurological findings.[39]

Hartford Life took the physical capabilities and restrictions described by Dr. Sniger and conducted an Employability Analysis to determine the 44 DOT[40]-recognized suitable jobs Plaintiff could hold.[41]  Hartford Life then notified Plaintiff on March 15, 2006, that LTD benefits were not payable beyond June 30, 2005, the same decision Hartford Life had reached in June 2005.[42]

Plaintiff appealed the decision on August 15, 2006, but initially did not provide any new medical information.[43]  On appeal, Hartford Life submitted her medical records to Dr. Brian Peck, a rheumatologist, and Dr. Alain de la Chapelle, a psychiatrist, for a second independent review.[44]  Dr. Peck concluded that Plaintiff was capable of performing full-time sedentary work.[45]  Dr. de la Chapelle noted that Plaintiff had not received psychiatric treatment in a very long time, and therefore no functional limitations could be identified, particularly in view of the fact that Plaintiff had not pursued any treatment for her depression.[46]

---

[39]  See docket 14 at H 246.

[40]  DOT stands for the United States Department of Labor.

[41]  See docket 14 at H236-237.

[42]  See docket 14 at H94-97.

[43]  See docket 14 at H79-80.

[44]  See docket 14 at H83-91.

[45]  See docket 14 at H88-89.

[46]  See docket 14 at H90-91.

After the two independent physicians had rendered their opinions, Hartford Life received additional medical information from Plaintiff, which was forwarded to Dr. Peck.[47] The new records included procedure notes for two lumbar epidural blocks performed in October 2006, and a treatment note from the Florida Spine Institute in November 2006, indicating that medications provided Plaintiff with 30-40% relief and the blocks also added 30% relief.[48] Dr. Peck reviewed the records and findings and did not change his opinion. The reports were reviewed by Chris Fleischer, a Rehabilitation Clinical Case Manager, who determined that the results of the Employability Analysis remained valid.[49] On January 15, 2007, Hartford Life notified Plaintiff that the appeal was denied and LTD benefits would remain unpayable beyond June 30, 2005.[50]

## STANDARD OF REVIEW

In addition to the summary judgment standard, the Eleventh Circuit has afforded a separate framework within which to review the denial of benefits stemming from an ERISA welfare benefits plan. See Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004).[51] While Williams sets forth a six-step formula to apply in "virtually *all* ERISA-plan benefit denials," in a case such as this where the plan grants Hartford Life as the plan

---

[47] See docket 14 at H81-84.

[48] See docket 14 at H81-84.

[49] See docket 14 at H164.

[50] See docket 14 at H78-82.

[51] See Doyle v. Liberty Life Assur. Co. of Boston, 511 F.3d 1336, 1340 (11th Cir. 2008); Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1232 (11th Cir. 2006)

administrator the discretion to decide claims and a conflict of interest exists based on the administrator's funding of the plan, the heightened arbitrary and capricious standard will typically apply. Williams, 373 F.3d at 1137. This Court need not reach this sixth step under Williams, however, as this case can be resolved at the first step, which is whether, under the de novo standard of review, the administrator's benefits-denial decision is "'wrong' (i.e., the court disagrees with the administrator's decision)." Williams, 373 F.3d at 1138. Because the Court concludes that Hartford Life's decision was not "de novo wrong" as that term is defined by case law of the Eleventh Circuit, the analysis need go no deeper.

## ANALYSIS

The issue is whether the medical information before Hartford Life supports its decision to discontinue LTD benefits for Plaintiff. Plaintiff had been diagnosed with a myriad of ailments including plantar fasciitis, fibromyalgia, cervical and lumbar strain, cervical spondylosis, disc herniation, bulging disc, osteoarthritis, migraines, and depression. Hartford Life cites abundant authority[52] for the premise that these medical conditions are amenable to great variation in the degree of severity and often do not prohibit people from working. Hartford Life is correct that the existence of pain alone is insufficient to justify receipt of LTD benefits.[53]

The medical information supporting Hartford Life's decision consisted of one independent medical examination and three independent medical reviews. The examination was

---

[52] See docket 22 at p. 5. This authority, however, does not hail from the Eleventh Circuit or the district courts thereunder.

[53] See Doyle v. Liberty Life Assur. Co. of Boston, 511 F.3d 1336, 1342 (11th Cir. 2008) (holding that it was not unreasonable to disregard subjective complaints of pain and suffering from fibromyalgia where administrator's reviewing physician found "subjective reports . . disproportionate to the physical, radiological, laboratory, and neurodiagnostic" records).

conducted by Dr. Baras in 2004, the first time LTD benefits were discontinued.  One of the independent medical reviews was conducted by Dr. Sniger in early 2006 before the second denial of benefits.  Additional independent medical reviews were performed by Drs. Peck and de la Chapelle in 2006 after the second denial of LTD benefits was appealed.  These physicians, although not her treating physician Dr. Milord, concluded that Plaintiff could perform sedentary work on a full-time basis.  Dr. Peck found, contrary to Dr. Milord, that the examination of Plaintiff and her medical records did not suggest a magnitude of pain sufficient to curtail her ability to perform sedentary functions for "any occupation."  The evidence of the nerve blocks and medications show that Plaintiff was able to obtain 30-40% relief with these treatments and thus alleviate some of the subjective complaints of pain.   Dr. de la Chapelle confirmed that there was no evidence that Plaintiff had sought treatment for her depression and no evidence that her psychiatric condition would be affected by full-time sedentary work.

This is a case in which the treating physician's opinion differs from independent medical examination and review.  Neither Hartford Life nor this Court are bound to permit the treating physician's opinion to trump that of the independent medical examination and review present in this case.  See Millman v. Kemper Nat. Servs. Plantation, Fla., 147 F.Supp.2d 1329, 1334 (S.D. Fla. 2001) (holding that conflicting evidence among the various physicians does not make administrator's decision unreasonable).  Moreover, it is well-established that the treating physician's opinion is not granted special deference over the opinions of independent physicians. See Shaw v. Connecticut General Life Ins. Co., 353 F.3d 1276, 1287 (11th Cir. 2003).

Against this backdrop, Plaintiff primarily challenges the reliance on the Employability Analysis Report compiled in 2006 after the appeal.  She contends that the report was flawed

because many of the 44 possible occupations required frequent handling, reaching, and fingering, contrary to the limitations placed on Plaintiff by Dr. Milord and not fully rejected by the consultative physician Dr. Peck.  Because the evidence supports the independent physicians' findings with respect to the restrictions and limitations placed on Plaintiff, Hartford Life was well within its boundaries to rely on the report as has been done in other cases.  See Barchus v. Hartford Life and Acc. Ins. Co., 320 F.Supp.2d 1266, 1278, 1286 (M.D. Fla. 2004).

Based on the de novo review of Hartford Life's denial of LTD benefits, the Court finds that the decision was not "wrong," and therefore under the heightened arbitrary and capricious standard, the denial of LTD benefits should be affirmed.  It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant's Dispositive Motion for Summary Judgment is **GRANTED**.

(2) The clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

(3) The clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 3, 2008.

    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record